**UNITED STATES DISTRICT COURT**

**DISTRICT OF MAINE**

| | |
|---|---|
| R. N., a minor, by and through her Mother and Next Friend, Merline Ngiramahoro, | ) ) ) |
| Plaintiffs | ) ) |
| v. | ) ) |
| XAVIER BOTANA, then- Superintendent of Portland Schools | ) ) **Case No. 2:26-cv-00342-SDN** ) |
| and | ) ) |
| PORTLAND PUBLIC SCHOOLS, | ) ) ) |
| Defendants. | ) ) |

**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT WITH INCORPORATED MEMORANDUM OF LAW**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants hereby move to dismiss Plaintiff's Complaint (ECF No. 1-4) for failure to state a claim upon which relief can be granted.

**INTRODUCTION**

Plaintiff, R.N., is a former student of the Portland Public Schools (PPS) and brings these civil rights and negligence claims by and through her Mother and Next Friend, Merline Ngiramahoro. Plaintiff's claims arise out of the criminal conduct of a former PPS employee, Benjamin Conroy, who sexually assaulted R.N. in October of 2021. Plaintiff brings her claims against the Portland Public Schools District (the "School Department" or "Department") and Xavier Botana, the PPS Superintendent at the time of Conroy's criminal conduct. Plaintiff's Complaint fails to state a claim and should be dismissed in its entirety.

1

## BACKGROUND

The Complaint alleges the following well-pleaded facts.[1]  R.N. has been diagnosed with Autism Spectrum Disorder and, in Fall 2021, she was a student in PPS's BEACH program, a specialized educational program administered by both teachers and education technicians ("ed techs") at Ocean Avenue Elementary School ("Ocean Avenue") for students with special needs, including those diagnosed with autism spectrum disorder.  Complaint ¶¶ 3, 8-9, 20.  Prior to the commencement of the 2021-2022 academic year, supervisors and ed techs at Ocean Avenue, including some working with the BEACH program, informed the Principal and then Superintendent Botana that "understaffing of [ed techs] was causing them not to fulfill their job requirements and was also placing their students at risk for harm."  *Id*. ¶ 12.  Plaintiff alleges that no "meaningful response" was received from anyone in the PPS administration in response to these concerns.  *Id*. ¶ 13.

Conroy was hired in late summer of 2021 to work as an ed tech, and Plaintiff alleges that "no meaningful screening of his application occurred" prior to his hiring, claiming that no background checks were performed and no previous employers were contacted.  *Id*. ¶ 17.  In early October 2021, Plaintiff alleges that one of Conroy's "colleagues" asked Conroy whether everything was "alright," and that Conroy responded by saying that he was "going to do something really bad."  *Id*. ¶ 18.

In October 2021, Conroy sexually assaulted R.N. during the school day, and he captured it on video with his cell phone and thereafter posted that video online.  *Id*. ¶¶ 21-22, 26.  Conroy was arrested and incarcerated in federal prison.  *Id*. ¶ 27.

---

[1] When evaluating a Rule 12(b)(6) motion to dismiss, the court "accept[s] as true all well-pleaded facts alleged in the complaint."  *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021).

Plaintiff alleges, through her mother, that her mother has suffered severe emotional distress as a result of the sexual assault. *Id*. ¶ 32. Plaintiff also alleges that PPS has rules, applicable to ed techs, that prohibit the use of personal cell phones while working and provide that no ed tech should work in a one-on-one relationship with any student in the BEACH program. *Id*. ¶ 15.

## LEGAL STANDARD

"[A] complaint will survive a motion to dismiss when it alleges 'enough facts to state a claim to relief that is plausible on its face.'" *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "This plausibility standard is 'not akin to a "probability requirement"' but it 'demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth.*, 4 F.4th 63, 70 (1st Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "'If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture,' dismissal is proper." *Alston*, 988 F.3d at 571 (quoting *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010)). In evaluating the sufficiency of the complaint, the Court "need not credit a plaintiff's '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

## ARGUMENT

The Complaint includes four counts, all of which are alleged against the School Department and Botana. In Count I, Plaintiff alleges a claim under the Maine Human Rights Act (MHRA); in Count II, she alleges a violation of her civil rights, citing in the caption of Count II to the Maine Civil Rights Act (MCRA), Title IX, and 42 U.S.C. § 1983; in Count III, she alleges a state law tort claim for negligent infliction of emotional distress (NIED); and, in Count IV, she

does not allege a cause of action but rather claims that she is entitled to punitive damages. The Complaint fails to state a claim upon which relief can be granted.

## I.   Plaintiff Failed to State a Cognizable Claim Under the MHRA (Count I)

### i.   Plaintiff's MHRA Claim is Time-Barred

"Before a plaintiff with a MHRA claim may recover attorney fees and damages, the plaintiff must establish that she first brought a claim before the Maine Human Rights Commission." *Gordon v. Cummings*, 2000 ME 68, ¶ 11, 756 A.2d 942; *see* 5 M.R.S. § 4622(1). Here, Plaintiff has not alleged that she exhausted this administrative remedy, nor could she because her complaint with the MHRC was filed more than 300 days after the alleged act of discrimination, and it was therefore dismissed as untimely. *See* 5 M.R.S. § 4611. Plaintiff therefore cannot pursue attorney's fees or damages, and there are no other remedies available to her under the MHRA.[2] *See Gordon*, 2000 ME 68, ¶ 11, 756 A.2d 942.

Even if Plaintiff wanted to pursue an MHRA claim absent the possibility of a remedy, her MHRA claim is time-barred. For although the MHRA permits the filing of an MHRA complaint in the Superior Court directly, it requires that a plaintiff commence an action under the MHRA "not more than either 2 years after the act of unlawful discrimination complained of or 90 days after any of the occurrences listed under [5 M.R.S. § 4622(1)(A)-(D)], whichever is later." 5 M.R.S. § 4613(3).[3] Here, Plaintiff commenced this action in Cumberland County Superior Court

---

[2] Even setting aside her failure to exhaust administrative remedies, Plaintiff nevertheless would not be able to recover compensatory damages for any MHRA claim that alleges discrimination in education. *See* 5 M.R.S. § 4613(2) (providing recovery for damages in the case of intentional employment discrimination but not for education discrimination).

[3] Unlike some other statutes, such as the Maine Tort Claims Act, *see* 14 M.R.S. § 8110, and claims for medical malpractice, *see* 24 M.R.S. §2902, the MHRA does not extend the time limit for minors.

on June 22, 2026, which was well beyond 2 years after the October 2021 acts alleged in the Complaint.[4]  Any MHRA claim should therefore be dismissed as untimely.

### ii.    Plaintiff's Mother Has No MHRA Claim

Plaintiff alleges that "R.N.'s mother has suffered damages" as a result of the alleged violation of R.N.'s rights under the MHRA.  Complaint ¶ 39.  R.N.'s mother is not a Plaintiff in this case; she brings this action solely on behalf of her minor child.[5]  Even if R.N.'s mother were a proper Plaintiff, she has no standing to recover for what she claims was a violation of her child's rights.

### iii.    Plaintiff Does Not State a Claim for Discrimination in Education Under the MHRA

Plaintiff alleges a violation under the MHRA on the bases that the School Department[6] (i) failed to follow or enforce its policies preventing staff members from cell phone use and from being 1:1 with students and (ii) acted with "deliberate indifference" in allegedly failing to respond to reports, made prior to the 2021 school year, that the BEACH classroom was understaffed. Complaint ¶¶ 12-13, 15, 23, 36-37.

The MHRA provides students with the right to be free from discrimination in their education "because of sex, sexual orientation or gender identity, a physical or mental disability, ancestry, national origin, race, color or religion."  5 M.R.S. § 4601.  "Maine courts look to federal law in the interpretation of the MHRA."  *Doe v. Sch. Admin. Dist. No. 19*, 66 F. Supp. 2d 57, 61-62 (D. Me. 1999) (assessing student's MHRA and Title IX claims in tandem under the Title IX framework).

---

[4] Plaintiff had to file her Complaint within 2 years after the act of unlawful discrimination given that the "occurrences listed under [5 M.R.S. § 4622(1)(A)-(D)]" are inapplicable as a result of Plaintiff's MHRC complaint being dismissed as untimely.

[5] Plaintiff refers in the Complaint at times to the "Plaintiffs" in the plural.  *See, e.g.*, Complaint ¶¶ 45, 47.

[6] There is no individual liability under the MHRA.  *See, e.g.*, *Charette v. St. John Valley Soil & Water Conservation Dist.*, No. 1:17-cv-35, 2017 U.S. Dist. LEXIS 94433, at *32 (D. Me. 2017).

Although Plaintiff does not explicitly allege what she believes to be the basis for any discriminatory animus, she does not plead any basis for discrimination other than her sex. Complaint ¶ 21 (alleging that she was sexually assaulted). Any MHRA claim will therefore require a showing of, at minimum, deliberate indifference. *See, e.g.*, *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998) (explaining that a school's response "must amount to deliberate indifference to discrimination" in order to show Title IX liability).

For all of the reasons discussed below with respect to any alleged Title IX claim, the Complaint fails to plausibly allege any facts showing deliberate indifference on the part of the school. Namely, the fact that the school was informed that the BEACH classroom was understaffed and did nothing in response, if true, does not amount to deliberate indifference because such reports would not have put the school on notice that an ed tech would commit a criminal act by sexually assaulting a student. Nor do Plaintiff's allegations that the school failed to ensure that Conroy followed its policies amount to deliberate indifference. *See Porto v. Town of Tewksbury*, 488 F.3d 67, 73 (1st Cir. 2007) ("[A] claim that the school system could or should have done more is insufficient to establish deliberate indifference.").

Plaintiff therefore failed to plausibly allege a claim for discrimination under the MHRA.

## II.      Plaintiff Failed to Plausibly Allege a Civil Rights Claim (Count II)

In the caption to Count II of the Complaint, Plaintiff cites to the MCRA, Title IX and Section 1983. Defendants address each of those statutes in turn.

### i.      Plaintiff Has No Cognizable Claim Under the MCRA

The MCRA affords a private right of action to "[a] person whose exercise or enjoyment of the rights secured by the United States Constitution or the laws of the United States or of the rights secured by the Constitution of Maine or the laws of the State has been interfered with, or attempted

to be interfered with." 5 M.R.S. § 4682(1-A). Such a cause of action applies, however, only "when there has been the use or threat of 'physical force or violence' in an effort to interfere with the exercise of a constitutional right." *Bagley v. Raymond Sch. Dep't*, 1999 ME 60, ¶ 10 n.5, 728 A.2d 127, 131; *see* 5 M.R.S. § 4682(1-A). Both the Law Court and this Court have therefore recognized that "[t]he Maine Civil Rights Act does not apply to claims where there is no claim of real or threatened violence." *Hewes v. Pangburn*, No 1:21-CV-00125-JDL, 2022 WL 823924, at *12 (D. Me. 2022); *Bagley*, 1999 ME 60, ¶ 10, n.5, 728 A.2d 127 ("The Maine Civil Rights Act is inapplicable to the claims presented. It applies when there has been the use or threat of 'physical force or violence' in an effort to interfere with the exercise of a constitutional right. No claim of violence, real or threatened has been presented by the parents").

Thus, where a plaintiff alleged that a school employee sexually abused her as a student but failed to plead any supporting facts showing that the *school district* interfered or attempted to interfere with her rights through physical force or violence or threat of the same, this Court dismissed her MCRA claim against the school district. *Hewes*, 2022 WL 823924, at *12. So too here, Plaintiff has failed to plausibly allege any facts to support a claim that either the School Department or Botana used or threatened violence against R.N., and Plaintiff's MCRA claim therefore must be dismissed. *Id*.

ii. Plaintiff Failed to State a Claim Under Title IX

A Title IX "violation can occur when a Title IX funding recipient is deliberately indifferent to known acts of sexual harassment of a student by a teacher."[7] *Doe v. Pawtucket Sch. Dep't*, 969 F.3d 1,7 (1st Cir. 2020). A teacher's sexual harassment of a student is not alone sufficient to allege a Title IX violation against a school district: liability under "Title IX is predicated upon notice to

---

[7] Title IX's implied private right of action "extends only to the educational institution itself," and Plaintiff therefore has no Title IX claim against Botana. *Frazier v. Fairhaven Sch. Cmt'e*, 276 F.3d 52, 65 (1st Cir. 2002).

an 'appropriate person' and an opportunity to rectify any violation." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). Title IX liability therefore exists only when "an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct." *Id*. at 277. This framework involves three inquiries:

> (1) Did the plaintiff identify an "appropriate person" (i.e., a school district official with the authority to take corrective measures in response to actual notice of sexual harassment), (2) was the substance of the actual notice sufficient to alert the school official of the possibility of harassment, and (3) did that official exhibit deliberate indifference to the harassment.

*Wadsworth v. Nguyen*, 129 F.4th 38, 69 (1st Cir. 2025) (quotation marks and alterations omitted).

The "actual notice" inquiry is an objective one and, although the school need not have detailed proof that harassment is occurring, "actual notice" is indeed actual notice, requiring "notice that there was a substantial risk or 'possibility' that harassment was occurring." *Id*. at 70 (emphasis supplied); *see also Gebser*, 524 U.S. at 290 ("The administrative enforcement scheme presupposes that an official who is advised of a Title IX violation refuses to take action to bring the recipient into compliance."). Related to the actual notice requirement, there can be Title IX liability only when the Title IX funding recipient is "deliberately indifferent to known acts of sexual harassment of a student by a teacher." *Pawtucket Sch. Dep't*, 969 F.3d at 7. This deliberate indifference standard is a "demanding one" so as to "eliminate the risk that [a funding] recipient would be liable in damages not for its own official decision but instead for its employees' independent actions." *Santiago v. Puerto Rico*, 655 F.3d 61, 73 (1st Cir. 2011). "[A] claim that the school system could or should have done more is insufficient to establish deliberate indifference." *Porto v. Town of Tewksbury*, 488 F.3d 67, 73 (1st Cir. 2007).

Here, Plaintiff has failed to plausibly allege facts showing that the school had actual notice that Conroy assaulted R.N., and she has therefore necessarily also failed to plead facts showing deliberate indifference. The Complaint alleges that, prior to the 2021-2022 school year, the School Department was "aware that the BEACH program . . . was substantially understaffed;" that supervisors and ed techs at Ocean Avenue had informed the Principal and then Superintendent Botana that "understaffing of education technicians was causing them not to fulfill their job requirements and was also placing their students at risk for harm;" and that Conroy said to one of his colleagues "I'm going to do something really bad." Complaint ¶¶ 10, 12,18, 44-45.

These facts fail to allege that the School Department had notice of a substantial risk or possibility that sexual assault of R.N. was occurring. As an initial matter, Plaintiff alleges facts regarding instances of purported "notice" that occurred before the assault; thus, it would have been temporally impossible for the School Department to know that sexual assault of R.N. was occurring. In any event, the school's knowledge of understaffing in the BEACH classroom does not provide the school with notice of the possibility that an employee will commit a criminal act. *See, e.g.*, *Gebser*, 524 U.S. at 291 (high school principal's receipt of "a complaint from parents of other students charging . . . that [a teacher] had made inappropriate comments during class . . . was plainly insufficient to alert the principal to the possibility that [the teacher] was involved in a sexual relationship with a student"). Plaintiff therefore fails to state a claim under Title IX.

iii.     Plaintiff Does Not State a Claim Under Section 1983

It is unclear whether Plaintiff brings a claim under 42 U.S.C. § 1983 that is distinct from her Title IX claim.[8] Although Plaintiff cites to both Section 1983 and Title IX in the caption of

---

[8] 42 U.S.C. § 1983 provides a cause of action for deprivation of federal rights; however, Title IX includes its own implied private right of action. *See, e.g., Cannon v. University of Chicago*, 441 U.S. 677 (1979); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281 (1998).

Count II to her Complaint, she otherwise fails to articulate any basis for a section 1983 claim. Plaintiff nevertheless does not plausibly allege a basis for liability under section 1983.

(a) **Plaintiff does not allege a violation of a federal right**. To prevail on a claim brought under § 1983, "a plaintiff must show that 'the challenged conduct [is] attributable to a person acting under color of state law' and that 'the conduct . . . worked a denial of rights secured by the Constitution or by federal law.'" *Freeman v. Town of Hudson*, 714 F.3d 29, 37 (1st Cir. 2013) (quoting *Soto v. Flores*, 103 F.3d 1056, 1061 (1st Cir. 1997)). Here, Plaintiff has failed to allege the denial of a right secured by the Constitution or by federal law. *See, e.g.*, *Wadsworth*, 129 F.4th at 64 (affirming dismissal of equal protection claim against school social worker when school social worker allegedly failed to report high school principal's sexual harassment of student because there were "no allegations that would permit a court or jury to infer that [the social worker] was motivated by an intent to discriminate against [plaintiff-student] based on her sex or that he treated her any differently than he would another student."). That failure is fatal to her section 1983 claim.

(b) **Plaintiff fails to allege municipal liability.** Even if Plaintiff has alleged the deprivation of a right, a municipal entity cannot be held vicariously liable under section 1983 for its employees' actions; it can only be held responsible for its own acts. *See Monell v. Dep't of Soc. Serv. of City of N.Y.*, 436 U.S. 658, 691 (1978). "Section 1983 municipal liability principles apply to . . . public education units in Maine." *Lavigne v. Great Salt Bay Comm. Sch. Bd.*, No. 2:23-cv-00158, 2024 WL 1975596, at *4 (May 3, 2024). Applying those principles, a local government entity, such as the School Department here, "may be held liable only where that entity's policy or custom is responsible for causing the constitutional violation or injury." *Id.* (quotation marks omitted). "[A] plaintiff who brings a section 1983 action against a municipality bears the burden

10

of showing that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Id*. (quotation marks omitted and emphasis in original).

Here, Plaintiff does not allege any basis from which it can be inferred that Conroy's sexual assault of R.N. was caused by a policy or custom of the School Department.  Although Plaintiff alleges that Conroy violated the school's policies regarding cell phone use and 1:1 relationships with students, that is insufficient to allege that any policy was the "moving force" behind the harm that occurred here; indeed, it amounts only to a claim of respondeat superior, which is insufficient under *Monell*.

Plaintiff's conclusory assertions about the screening of Conroy's employment also fail to state a claim for municipal liability.  "The Supreme Court has stated that it is unclear whether a single hiring decision due to inadequate screening can ever lead to Monell liability." *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4, 30 (1st Cir. 2005).  "If it can, however, the plaintiff would need to show that, if the City had performed a full review of the [employee's] record, the particular constitutional violation committed by the hired [employee] would have been a 'plainly obvious consequence' of the hiring decision by the municipality."  *Id*.  "This standard is exceptionally stringent," with the First Circuit explaining that even a police officer whose background contained complaints of physical violence, including acts of aggression and assault, may still be insufficient to make a City liable for inadequate screening of an officer who then uses excessive force. *Id*. (relying on *Bd. of Cnty. Commissioners of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997), in which the Supreme Court concluded that an officer's record was insufficiently related to excessive force even where his record included a conviction for assault and battery).

Here, Plaintiff alleges in only conclusory fashion that "no meaningful screening of [Conroy's] application occurred," Complaint ¶ 17; however, even if that were true, it is insufficient

to state a claim under Section 1983 because Plaintiff has not alleged any facts from which it can be reasonably inferred that Conroy's criminal conduct would have been a "plainly obvious consequence" of hiring Conroy.

     **(c) Plaintiff failed to state a claim for supervisory liability**.  All that Plaintiff has alleged here with respect to the Defendants' own acts is that Defendants were "deliberately indifferent" to warnings that the BEACH program was understaffed, claiming that Defendants "failed to supervise, or appropriately screen for employment, Benjamin Conroy and other education technicians that it employed" and that "a Supervisor within the Ocean Avenue Elementary school failed to take any steps to prevent the harm imposed upon Plaintiffs even after being warned by Benjamin Conroy himself that he was about to do something really bad."  Complaint ¶¶ 43-45.[9] This Court must disregard "legal conclusions couched as fact," such as Plaintiff's conclusory assertion that Defendants' acted with "deliberate indifference."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 43 (1st Cir. 2013) ("[C]onclusory allegations that merely parrot the relevant legal standard are disregarded, as they are not entitled to the presumption of the truth.").

     "[A] supervisor may not be held liable under section 1983 on the tort theory of respondeat superior, nor can a supervisor's section 1983 liability rest solely on his position of authority. . . the supervisor's liability must be premised on his own acts or omissions" and "mere negligence will not suffice." *Guadalupe-Baez v. Pesquera*, 819 F.3d 509, 515 (1st Cir. 2016).  Instead, supervisory liability requires showing, in part, that "the supervisor acted with deliberate indifference" and that

---

[9] Plaintiff alleges in Count III that this unnamed Portland employee was Conroy's "supervisor;" however, she alleges elsewhere in the Complaint that this employee was merely a "colleague."  Complaint ¶ 18.  In addition to the reasons described below, Plaintiff has failed to state a claim for supervisory liability because she has failed to allege that this unnamed individual was indeed Conroy's supervisor. *See Ortolano v. City of Nashua*, 770 F.Supp.3d 407, 411 (D. N.H. 2025) (plaintiff must show "a person over whom the supervisor had authority violated the plaintiff's constitutional rights" as an element of establishing supervisory liability).

"the supervisor's acts or omissions had a causal relationship with the deprivation of the plaintiff's rights." *Ortolano v. City of Nashua*, 770 F.Supp.3d 407, 411 (D. N.H. 2025). "[T]o satisfy the deliberate indifference prong" in the context of supervisory liability, "the plaintiff must show that the supervisor's actions or omissions evince reckless or callous indifference to the constitutional rights of others," requiring a showing that "it would be manifest to any reasonable official that this conduct was very likely to violate an individual's constitutional rights." *Ortolano*, 770 F.Supp.3d at 411 (no supervisory liability where supervisor did not have knowledge of facts from which the supervisor should have found it obvious that a substantial risk of serious harm would flow from his actions).

For reasons similar to Plaintiff's inability to show deliberate indifference with respect to her Title IX claim, she likewise fails to plausibly allege a claim for supervisory liability: it would not have been obvious, based on a report of understaffing or based on hearing an employee say "I am going to do something bad," that the employee would commit a criminal act by sexually assaulting a student.

Moreover, even if Plaintiff had pled deliberate indifference on the part of Botana or this unnamed colleague, she nevertheless has failed to plead facts from which causation for supervisory liability can be reasonably inferred. "Causation remains an essential element, and the causal link between a supervisor's conduct and the constitutional violation must be solid . . . . This causation requirement contemplates proof that the supervisor's conduct led inexorably to the constitutional violation. *Guadalupe*-Baez, 819 F.3d at 515 (quotation marks omitted). Although "inaction in the face of a known history of widespread abuse" may be sufficient to meet this showing of causation, "[i]solated instances of unconstitutional activity will not suffice," *id*.; yet, here, that is all that Plaintiff has pled, if at all.

13

Plaintiff therefore failed to state a claim under the MCRA, Title IX, and Section 1983, and Count II of the Complaint should be dismissed as to both the School Department and Botana.

### III.    Plaintiff Failed to State a Claim for NIED (Count III)

In Count III, Plaintiff alleges that Defendants created a special relationship with the parents of "special needs children;" that Defendants knew or should have known that failing to protect "Plaintiff and other special needs students" from sexual assault by employees would likely cause severe emotional anguish to the children's parents; and that Defendant's alleged negligent acts or omissions caused Plaintiff to be sexually assaulted, "which, in turn, has caused severe emotional anguish and other damages to Plaintiff's mother." Complaint ¶¶ 49-51. These allegations fail to state a claim for NIED against either the School Department or Botana.

#### i.    The School Department is immune from any negligence claim

"As a general rule, the Maine Tort Claims Act (MTCA) provides governmental entities with absolute immunity from suit for any tort action for damages." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 7, 816 A.2d 63; *see* 14 M.R.S. § 8103. The MTCA employs an "exception to immunity approach," and absolute immunity is otherwise the rule. *Lightfoot*, 2003 ME 24, ¶ 7, 816 A.2d 63. School districts "of any type" qualify for immunity as governmental entities under the MTCA. 14 M.R.S. § 8103(2), (3); *see also, e.g.*, *Lightfoot*, 2003 ME 24, 816 A.2d 6. Here, there is no applicable exception that waives the School Department's absolute immunity, and Plaintiff's tort action against the Department therefore must be dismissed.

#### ii.    Plaintiff has no standing to bring a claim for her mother's emotional distress, and Plaintiff's mother would otherwise fail to state a claim for NIED.

As an initial matter, Plaintiff's mother brings this lawsuit acting solely on behalf of her minor child, R.N. Because Plaintiff's mother is not a party herself, the NIED claim for damages must be dismissed.

14

Even if Ms. Ngiramahoro had asserted the NIED claim on her own behalf, the circumstances here are not among the limited circumstances for which the Law Court recognizes recovery in tort for purely emotional harm.

"[T]he duties that apply in an action for emotional harm are more limited than the general duty to avoid causing physical harm." *Boivin v. Somatex*, 2022 ME 44, ¶ 16, 279 A.3d 393. "This distinction reflects the fact that [the] determination of duty for claims of emotional harm is not generated by traditional concepts of foreseeability." *Id*. (quotation marks omitted); *see also Curtis v. Porter*, 2001 ME 158, ¶ 18, 784 A.2d 18 ("Plaintiffs claiming negligent infliction . . . face a significant hurdle in establishing the requisite duty. . . . Although each person has a duty to act reasonably to avoid causing physical harm to others, there is no analogous general duty to avoid negligently causing emotional harm to others."). The Law Court has recognized "a duty to act reasonably to avoid emotional harm to others [i.e., recovery for NIED] in very limited circumstances: first, in claims commonly referred to as bystander liability actions; and second, in circumstances in which a special relationship exists between the actor and the person emotionally harmed." *Boivin*, 2022 ME 44, ¶ 19, 279 A.3d 393.

Parents who recover for their own emotional harm resulting from harm to their child generally can recover only in this first "bystander liability" category because the harm is foreseeable when the parent actually witnesses harm to their child. *See Culbert v. Sampson's Supermarkets Inc.*, 444 A.2d 433, 438 (Me. 1982) (mother was allowed to recover when she watched her six-month-old son choke on foreign substance that was in a jar of baby food); *cf. Cameron v. Pepin*, 610 A.2d 279, 284 (Me. 1992) (parent could not recover where parent did not observe the defendant's negligence). A close relationship to the victim is therefore not alone enough for NIED recovery, *see Culbert*, 444 A.2d 438 (holding that a "psychic injury may be

15

deemed foreseeable when the plaintiff bystander was present at the scene of the accident, suffered mental distress as a result of observing the accident and ensuing danger to the victim, and was closely related to the victim"), and the Law Court has recognized "the necessity of avoiding both unlimited liability and liability out of all proportion to culpability," *Cameron*, 610 A.2d at 283.

Because R.N.'s mother did not witness the harm here, she attempts to shoehorn the mother's NIED claim into the second narrow category for NIED recovery, contending that her mother, as a parent of a student with autism, has a "special relationship" with the school. Such a special relationship would not only lead to unlimited liability for schools, but it is also not the kind of "special relationship" that gives rise to the exceptional duty to avoid emotional harm. The Law Court has recognized such a special relationship only in limited circumstances where the nature of the relationship between the negligent actor and the victim claiming emotional harm makes the harm foreseeable. *See Gammon v. Osteopathic Hosp. of Maine, Inc.*, 534 A.2d 1282, 1285 (Me. 1987) ("A defendant is bound to foresee psychic harm only when such harm reasonably could be expected to befall the ordinarily sensitive person.").

For example, where a therapist got sexually involved with his patient's companion while the patient was seeking treatment from the therapist for problems related to her relationship with her companion, the patient was allowed to proceed with an NIED action against the therapist because, the Law Court reasoned, "the fact that a therapist undertakes the treatment of a patient's mental problems and that the patient is encouraged to divulge his innermost thoughts" makes the patient "extremely vulnerable to mental harm if the therapist fails to adhere to the standards of care recognized by the profession." *Rowe v. Bennett*, 514 A.2d 802, 806-07 (Me. 1986). When a son found a severed leg in his deceased father's belongings bag given to him by the hospital, emotional harm to the son was foreseeable where "courts have concluded that the exceptional vulnerability

16

of the family of recent decedents makes it highly probable that emotional distress will result from mishandling the body." *Gammon*, 534 A.2d at 1285 ("This rationale . . . is but another way of determining that the defendant reasonably should have foreseen that mental distress would result from his negligence.").

On the other hand, where an adult member of a church assaulted a minor child member of the church, the child could not recover for NIED when the Law Court found there was no special relationship between a church minister and its members, explaining that "we have never recognized a relationship between churches and their members of the type that would give rise to a duty to avoid psychic injury to those members." *Bryan R. v. Watchtower Bible and Tract Soc. Of New York, Inc.*, 1999 ME 144, ¶ 31, 738 A.2d 839 ("Only where a particular duty based upon the unique relationship of the parties has been established may a defendant be held responsible.").

Here, like the relationship asserted in *Bryan R.*, the relationship between a school and parents of students with "special needs" is not among the limited special relationships for which the Law Court has recognized recovery for NIED. Nor does such a relationship make the harm here—the sexual assault of a student—foreseeable. The alleged harm to Plaintiff's mother is foreseeable, if at all, because of her relationship with her child. Recovery under that circumstance is limited to bystander liability, for which Plaintiff's mother cannot recover because she did not witness the harm to her child.

### iii.    Plaintiff failed to plausibly allege a claim for NIED against Botana

Although Plaintiff generically pleads all claims, including the claim for NIED, against "Defendants," she fails to plead a single fact that would give rise to a claim for NIED against Botana. She does not plead that Botana was actually involved in the process that led to Conroy being hired. She does not plead that Botana was aware that Conroy had violated any of the School

17

Department's policies.  She does not plead that anyone ever reported any concerns about Conroy to him.  And even with respect to her contention of a special relationship, her specific allegation is limited only to the School Department.  *See* Complaint ¶ 25 ("when a school district offers a special needs academic program, such as the BEACH program at the Ocean Avenue Elementary School, it creates a special relationship with both the student and the student's parent(s) where the school district becomes responsible for ensuring the safety of the student while on school premises."); *see also* Complaint ¶¶ 48-49.  Even if this allegation were sufficient to give rise to a NIED claim against the Department—which, as discussed above, it is not—Plaintiff has failed to plausibly plead the existence of such a relationship between Botana and R.N.  For this reason, as well as those discussed above, any NIED claim against Botana should be dismissed.

**CONCLUSION**

Although the underlying facts giving rise to Plaintiff's Complaint are tragic, Plaintiff's Complaint must be dismissed in its entirety because it fails to state a claim upon which relief can be granted.

Dated:  July 7, 2026

/s//s/ *Melissa A. Hewey*
Melissa A. Hewey
Susan M. Weidner

Attorneys for Defendants
Drummond Woodsum
84 Marginal Way, Suite 600
Portland, ME  04101-2480
Telephone (207) 772-1941
Facsimile (207) 772-3627
mhewey@dwmlaw.com
sweidner@dwmlaw.com